DETLAFF *v.* IDEAL MANUFACTURING CO.

ACCORD AND SATISFACTION—PAYMENT BY CHECK—STATEMENT OF ONE PARTY—SUFFICIENCY.

> The receipt by an employé of a check handed him by his employer with the statement that it constitutes a payment of the amount due on their account, there being nothing to show that the employé knew the manner of keeping the account,. does not constitute an accord and satisfaction.

Error to Wayne; Rohnert, J. Submitted January 9,. 1906. (Docket No. 42.) Decided June 4, 1906.

Assumpsit by Anthony J. Detlaff against the Ideal Manufacturing Company for work and labor. There was judgment for plaintiff, and defendant brings error. Affirmed.

*John H. Bissell* (*H. E. Spalding,* of counsel), for appellant.

*Stellwagen & MacKay,* for appellee.

BLAIR,. J. The plaintiff, in 1899, was the foreman of several departments of the defendant's manufacturing business, and, among others, of the cast-iron toy department, at a salary of $1,158 a year. At the end of that year his salary was raised to $1,400, and he also. made a contract with the defendant, through its superintendent, Mr. Bush, by which he was to finish up and assemble the castings for toy pistols and prepare them for market at an agreed price, the defendant furnishing the rough castings, advancing the pay-roll and all other expenses. Plaintiff was to be paid for his work as the goods were shipped, and the contract was to continue from January 1, to July 1, 1900. Work commenced under the contract, and plaintiff received payments from time to time, but claims that there is still due him, on goods manufactured under the contract between January 1st and July 1st,

$2,230.85, with interest thereon, over and above the amounts paid him.   After July 1, 1900, plaintiff continued in the defendant's employ, in charge of the same departments he previously had charge of, and at the salary of $1,400 a year until early in 1902, when defendant's iron toy business was bought out by a new corporation, the Ideal Toy Company, which was controlled, however, by the same persons who control the Ideal Manufacturing Company.   Plaintiff became superintendent of the toy company and continued in its employ until early in 1904, when the defendant repurchased the iron toy business. He began this suit in June, 1904.

All the payments made to the plaintiff on this account were in checks signed by John H. Bissell, who has been treasurer of the defendant since its organization.   The last of these checks was for $56.57, and was received on the 21st of December, 1900.   When the check of December 21st was made, Bissell claims he said to plaintiff he would see how the account stood; that he thought it was nearly paid and would give him a check for the balance; that he then either looked at the books or had the bookkeeper do so, taking a memorandum of the account, and from that memorandum made out the check for $56.57 and handed it to the plaintiff, saying:   "There is a check that pays the balance due on the account."   Mr. Bissell further said that the plaintiff accepted the check, making no objection to it as a payment of the balance due, and making no claim that there was anything further due, and went away, and that plaintiff made no claim to him that there was anything more due until late in 1902, when his connection with the defendant had ceased.   Plaintiff testified:

"I had a conversation with Mr. Bush [defendant's superintendent] with reference to the contract between the 1st of April and the 10th, when I handed in my statement to him, and he looked at it, and he said, ' Why, you are coming out ahead, ain't you ? '   I don't remember exactly what he said but anyway he made out that I was

making more than he thought I would. He did not say anything further then. I had a further conversation when I handed in the next monthly report. He looked at it and he said, 'You are making too much money.' And I laughed and said, 'That is what I am here for, to make all I can.' That was the next month, about May, I think it was. I had no conversation with him except that one conversation between the 1st and 10th of April until May, as near as I can remember. He did not tell me on the 1st of April that the contract must be stopped. He did not tell me that in May. He said that I was making too much money, and he did not know whether the firm would stand it or not, and I laughed. * * * I don't know why that check was made for $56.57. That check was not paid to me as a final balance on the account which was agreed to be paid me in settlement of the contract. I don't know whether I received it from you or somebody in the office, and I don't remember why it was $56.57. When I received that check I did not then understand, and we didn't all understand, that that was a final payment on the settlement of that contract matter with me. When I received other checks I understood that they were paid on the contract; that was what they were paid on always. Every time I asked for money I got about one-quarter what I asked for."

The making of the contract in question was conceded, and we find no evidence in the record, or offer to prove, that any notice of the rescission of the contract had ever been given to the plaintiff during its life or that the same had ever been terminated by mutual consent. Plaintiff was, therefore, entitled to recover the entire amount due under the contract for the period agreed upon, unless his acceptance of the check for $56.57 was in settlement of his claim.

Defendant contends that the court erred in charging the jury in effect:

"(a) That there could be no settlement of a liquidated demand for less than its face.

"(b) That there cannot be an unliquidated demand unless there is a dispute as to the amount due and that amount is doubtful."

It is argued that—

" The jury would naturally suppose from the charge
that if, on the testimony submitted to them, the amount
seemed clear and readily ascertainable, it was a liquidated
account and, therefore, incapable of settlement at less than
its face."

The undisputed evidence is that plaintiff performed, on
his part, for the entire contract period.   It is not claimed
that the check, by means of which the alleged satisfaction
was made, was for the balance of an account of the bus-
iness of the contract period.   It is claimed, and was as-
serted on the trial, that it was for the balance of an ac-
count kept by defendant according to some theory or
assumption that the contract had been rescinded, or abro-
gated, on or about April 1, 1900.   There is no evidence
of such a rescission, no evidence that plaintiff knew the
manner of keeping the account, no evidence of any settle-
ment or accord, except the disputed testimony that the
check was handed to plaintiff with the statement that it
was the balance due on the account, that he took it,
said nothing, and went away.   Plaintiff received the check
from the treasurer of defendant.   The undisputed testi-
mony is that very soon thereafter he took the matter up
with the superintendent of the defendant and then with
the successor to that superintendent, was put off from
time to time until December, 1902, when he received a
statement of his alleged account.   I think it has never
been held and should not now be held, admitting the tes-
timony introduced by defendant to be true, that accord
and satisfaction has been proven.

In this view of the matter, defendant was not entitled
to take the opinion of the jury upon that subject, and the
judgment should be affirmed.

MCALVAY, GRANT, MONTGOMERY, and OSTRANDER,
JJ., concurred.