Merrimack,  
June 1, 1937.

CHARLES G. CLAPP CO. *v.* HORACE E. MCCLEARY, & *a.*, *Trustees.*

*Robert W. Upton* and *Laurence I. Duncan* (*Mr. Duncan* orally), for the plaintiff.

*McLane, Davis & Carleton* (*Mr. William F. Harrington, Jr.,* orally), for the defendants.

BRANCH, J. During the cross-examination of Charles G. Clapp, president of the plaintiff corporation, the witness stated that he was unable to find certain letters written to the plaintiff by the defendant McCleary. The cross-examination then continued as follows:
"Q. How long have you been in business, or the Clapp Company? A. Fifteen years. Q. You do a fairly extensive business? A. Yes, sir. Q. It is a corporation? A. Yes. Q. Incorporated, for a large

sum of money? A. Yes. *Mr. Upton:* I pray your Honor's judgment. I object to that. Q. You have a substantial office force? A. Yes. *Mr. Upton:* May we have an exception to that question I objected to. It was answered before I could object. *Court:* Yes, exception noted. Q. You have a substantial office force? A. Fair. Q. You do receive letters in the course of your business? A. Yes. Q. You generally file them? Q. Yes."

In support of the above exception it is now argued that the testimony that the plaintiff company was "incorporated for a large sum of money" was immaterial and prejudicial to the plaintiff.

At the time when this exception was taken, there were already in evidence, without objection by the plaintiff, three letters from the plaintiff to the defendant McCleary upon the stationery of the plaintiff, the heading of which read, in part, as follows: "Charles G. Clapp Company, a Massachusetts Corporation. Capital $600,000." The testimony that the plaintiff company was "incorporated for a large sum of money" was, therefore, "merely the statement of a fact already in evidence without objection" and "no prejudice could have resulted from its admission." *State* v. *Harmon,* 88 N. H. 267. Since the evidence "related solely to a matter which was not in dispute" its admission, if erroneous, was also harmless. *State* v. *Saidell,* 70 N. H. 174, 176; *Rowell* v. *Railroad,* 58 N. H. 514; and other cases collected in Hening, N. H. Digest, 1262.

The plaintiff also excepted to the admission of a letter written to it by the defendant McCleary under date of February 6, 1932, which read, in part, as follows: "Regarding the Folger property, I do not feel that there has enough been paid in so we would be warranted in advancing any part of the commission." This was in answer to a letter of the plaintiff under date of January 23, 1932, in which it was said: "We would very much appreciate a portion of the commission at this time." It is now argued that McCleary's letter "was a self-serving declaration of one of the defendants and should have been excluded under the hearsay rule."

In passing upon the admissibility of this letter, its "self-serving" character is not a decisive consideration. "There is no principle of Evidence especially excluding 'self-serving' statements by an accused or by any one else." 3 Wig., Ev. s. 1765; *Caplan* v. *Caplan,* 83 N. H. 318, 327; *Semprini* v. *Railroad,* 87 N. H. 279, 280.

Neither did the hearsay rule require the exclusion of this letter, since it falls within one of those "classes of utterances which legally pass the gauntlet of the Hearsay rule because it does not apply to

them." 3 Wig., Ev. s. 1766. It was not introduced to evidence the truth of the matters stated therein, but to show the defendant's understanding of the contract between him and the plaintiff. 3 Wig., Ev. s. 1770; *Callahan* v. *Roberts*, 127 Me. 21. Its admission was justified by the general principle of evidence which requires "that the whole of a verbal utterance must be taken together." 3 Wig., Ev. s. 2094.

This principle of completeness has frequently been stated and applied in this jurisdiction, although its fundamental character and its wide field of operation may not have received adequate exposition. *Page* v. *Hazelton*, 74 N. H. 252, 254, and cases cited. "It applies to every kind of utterance without distinction," (3 Wig., Ev. s. 2113) including oral statements, confessions, testimony and conversations, (*Ib.*, s. 2115) all sorts of writings (*Ib.*, s. 2116) and account books (*Ib.*, s. 2117) and to all the letters which comprise the "mutual correspondence between the parties concerning the transactions in dispute, in which their respective claims were stated and admissions made." *Smith* v. *Abbott*, 221 Mass. 326, 331.

In regard to the letters of a correspondence, the application of the general principle of completeness is especially clear when the letters first offered include references to prior letters. 3 Wig., Ev. s. 2120. Its application to replies or subsequent utterances, however, has been denied by Professor Wigmore, who states his view as follows: "A *subsequent* utterance by another person can hardly be conceived as incorporated by reference. Hence, when B puts in A's admission, B cannot put in at the same time his own reply, since the sense of A's utterance can hardly be qualified by what B may later say of it." (*Ib.*)

No reason is given by the author for his conclusion thus indicated that the general principle of completeness is here limited in its application to cases in which the doctrine of incorporation by reference can also be applied, nor do the decisions sustain such a limitation. On the contrary, an examination of the cases which have been decided since the first edition of Wigmore's treatise was published in 1904, indicates that the courts of this country have generally applied the principle so as to admit all the letters which, in fact, make up a complete correspondence, without regard to the theory of incorporation by reference.

In New York, numerous decisions by the Appellate Division of the Supreme Court, at least two of which were affirmed by the Court of Appeals, seem to settle the rule that where part of a correspondence

is placed in evidence, the whole correspondence, including answers to letters already produced, becomes admissible. *Darling* v. *Klock*, 53 N. Y. Supp. 593; affirmed, 165 N. Y. 623; *Buedingen &c. Co.* v. *Company*, 85 N. Y. Supp. 621, 625; affirmed, 181 N. Y. 563; *Stevens* v. *Gilbert*, 120 N. Y. Supp. 114; *Lau Co.* v. *Darr*, 135 N. Y. Supp. 598; *Ackroyd & Sons* v. *Proctor*, 166 N. Y. Supp. 69; *Warfield* v. *Company*, 177 N. Y. Supp. 733; s. c. 180 N. Y. Supp. 957.

The effect of the decisions upon this point is correctly summarized in 2 Jones, Evidence, (2d. *ed.*) *s.* 716, as follows: "Where a letter is read to charge a party, his answer is held to be admissible in reply, under the rule which admits the whole of a conversation or transaction." Among the numerous cases which support this conclusion, reference may be made to the following: *Hoggson &c. Co.* v. *Sears*, 77 Conn. 587; *Proctor* v. *Company*, 145 Mich. 503; *Hinton* v. *Welch*, 179 Cal. 463; *Guild* v. *More*, 32 N. D. 432; *Mooney* v. *Burgess*, 142 Minn. 406; *Gibson* v. *Lacey*, 87 Ind. 202; *Portsmouth Oil &c. Co.* v. *Company*, 195 Ala. 256; *Tishomingo &c. Co.* v. *Gullett*, 52 Okla. 180.

The general principle of completeness is based upon conceptions of substantial justice and fairness which are far more fundamental and important than the theory of incorporation by reference. This appears elsewhere in Professor Wigmore's discussion of the principle where we read: "So with any utterance of any thought; the complexity of the latter produces elaboration in the former. It follows that the thought as a whole, and as it actually existed, cannot be ascertained without taking the utterance as a whole and comparing the successive elements and their mutual relations. To look at a part alone would be to obtain a false notion of the thought. The total—that is to say the real—meaning can be got at only by going on to the end of the utterance. One part cannot be separated and taken by itself without doing injustice, by producing misrepresentation." 3 Wig., Ev. *s.* 2094.

From a slightly different point of view another authority on the law of evidence refers to the basis of the principle as follows: "Fairness may mean *completeness*. The preservation of good faith by the parties frequently assumes the form of a requirement by the court that the *complete* meaning of an oral statement or the entire purport of a document should be placed before the jury." 1 Chamberlayne, Evidence, *s.* 488.

When a letter of one party has been read in evidence which states his position with reference to the matter in controversy, fairness may and usually will demand that his opponent's answer thereto be also

admitted in order that the complete utterance of the parties upon the subject may be known, and that neither may suffer from the "misrepresentation" which is sure to result when fragments of that utterance are considered. "Much, therefore, will depend upon the circumstances of each case and the character of each document, and no fixed rule can fairly be laid down; the trial Court's discretion should control." 3 Wig., Ev. s. 2104.

In *Hoggson &c. Co.* v. *Sears*, *supra*, the Supreme Court of Connecticut used the following language: "Having admitted the defendant's letter, the court properly received with it the plaintiff's reply for the purpose for which it was offered, namely, of showing the plaintiff's dissent, expressed to the defendant, from the statements of the defendant's letter." We have reached a similar conclusion in the present case.

*Judgment on the verdict.*

All concurred.